CISCO & N. E. RY. CO. v. DIEFENDERFER et al. (No. 41.)*

(Court of Civil Appeals of Texas. Eastland. May 17, 1925. Rehearing Denied Dec. 18, 1925.)

1. Railroads ⊚159(9)—One furnishing labor and equipment to contractor ballasting roadbed held entitled to lien.

One performing labor and furnishing teams and tools to haul rock used by contractor in ballasting railroad roadbed *held* to have a lien therefor on railroad's property, enforceable under Vernon's Sayles' Ann. Civ. St. 1914, art. 5640; it being immaterial that he contracted with contractor to furnish such labor and material.

2. Railroads ⊚159(9)—One furnishing labor and equipment to contractor ballasting roadbed entitled to lien, notwithstanding contractor's debt to railroad.

One furnishing labor and equipment to contractor ballasting railroad roadbed is entitled to lien on railroad property, under Vernon's Sayles' Ann. Civ. St. 1914, art. 5640, notwithstanding contractor was indebted to railroad.

3. Railroads ⊚159(10)—One furnishing labor for ballasting roadbed entitled to lien without giving notice or recording lien.

One furnishing labor and equipment to contractor ballasting railroad roadbed was entitled to lien therefor, on railroad property under Vernon's Sayles' Ann. Civ. St. 1914, art. 5640, regardless of whether notice thereof was given or lien recorded.

4. Railroads ⊚159(9)—Judgment foreclosing lien reversed for intermingling of labor and equipment furnished by claimant and others.

Judgment foreclosing lien on railroad for labor and equipment furnished to contractor ballasting roadbed will be reversed, where labor and equipment furnished by claimant is so intermingled with that furnished by others that it cannot be determined what amount was furnished by such other persons.

Appeal from District Court, Stephens County; C. O. Hamlin, Judge.

Action by the Cisco & Northeastern Railway Company against R. C. Diefenderfer for a debt and foreclosure of chattel mortgage, wherein J. P. Flynn was appointed receiver; and J. A. Clifft intervened. From a judgment for plaintiff against Diefenderfer and in favor of intervener against same defendant, with decree establishing and foreclosing laborer's lien on plaintiff's roadbed for satisfaction of intervener's judgment, plaintiff appeals. Reversed and remanded.

Butts & Wright, of Cisco, for appellant.

Benson & Dean, of Breckenridge, for appellees.

RIDGELL, J. [1] Appellant brought this suit against R. C. Diefenderfer in the district court of Stephens county for a debt and foreclosure of a chattel mortgage. J. P. Flynn was appointed receiver. The appellee J. A. Clifft intervened in the suit, asking judgment for an alleged indebtedness due him upon a contract to furnish crushed stone for use in ballasting its railroad. The appellant filed a supplemental petition, consisting of a general denial and special answers to petition of intervener. The case was tried before the court, and resulted in a judgment in favor of appellant against the appellee Diefenderfer for $11,270 and in favor of appellee Clifft against Diefenderfer for $407.98, with a decree establishing and foreclosing a laborer's lien on appellant's roadbed, etc., for the satisfaction of his judgment recovered against Diefenderfer. The appellant excepted, and gave notice of appeal to the Court of Civil Appeals for the Second Supreme Judicial District of Texas, at Fort Worth, and filed a supersedeas bond, and thereby perfected its appeal to this court. The first proposition which we will consider and is made by ap-

pellant under its third assignment of error is as follows:

"The facts show that the appellee Diefenderfer had a contract with appellant to furnish crushed stone for use in ballasting its railroad; that appellee Clifft had a contract with Diefenderfer by which Clifft was to furnish wagons, teams, and labor, and to haul rock for use by Diefenderfer in crushing stone, for which Clifft was to receive a stipulated price per cubic yard; that in performing his contract in hauling and delivering stone under his contract with Diefenderfer appellee Clifft employed laborers to assist him, and also employed other men with their wagons and teams; that he did some of the work himself, and used some of his own teams, but there was no evidence introduced showing what portion of the work was done by other laborers, and by use of other men with their wagons and teams, nor the value thereof, nor was there any evidence introduced showing, or tending to show, the value of the labor and services performed by Clifft himself, nor of the use of his wagons and teams, nor was there any evidence introduced nor shown by the record in the case from which the court could have found either the value of the use of the wagons and teams owned by him and used in the work, and for this reason the trial court erred in decreeing appellee Clifft to have a lien on the roadbed, etc., of appellant for the satisfaction of his debt and in decreeing a foreclosure of the lien."

The testimony of J. A. Clifft as to his contract was as follows:

"By the terms of my contract with Mr. Diefenderfer I was to furnish all teams, wagons, labor, and other equipment to gather, load, and haul a sufficient amount of rock to keep the crusher running during working hours."

"Mr. Diefenderfer was to pay me 35 cents for all rock gathered, hauled, and delivered within a radius of one quarter mile of the crusher; 45 cents for all rock gathered, hauled, and delivered between the one quarter and one-half mile radius; and increase of 10 cents between the three quarters of one mile radius, and an additional 10 cents for each quarter of a mile up to two miles. This price was per cubic yard."

"I owned seven wagons and teams that I used in doing this work, and the others belonged to other parties, depending on the need I had for them."

"I did some of this work in person. I used a pick and shovel and sledge hammer and other tools at different times myself in person. I aided in putting the rock in wagons, and I put in all of the time in actual work during the life of this contract."

Article 5640 of Revised Statutes provides that:

"All mechanics, laborers and operatives who may have performed labor, or work with tools, teams or otherwise, in the construction, operation or repair of any railroad * * * and to whom wages are due or owing for such work, or for the work of tools or teams thus employed, or work otherwise performed, shall hereafter have a lien prior to all others upon such railroad and its equipments for the amount due him for personal services, or for the use of tools or teams."

It would follow under this statute that Clifft would have a lien to secure him in labor performed and for his work with his tools and teams. In the case of Hales v. San Antonio, U. & G. Ry. Co., 111 Tex. 434, 238 S. W. 1106, our Supreme Court holds:

"Where plaintiff alleged that under an oral contract with a railroad company he performed the labor and furnished the teams and equipment for the construction of a railroad bed and the district court found that the plaintiff performed the work alleged by him in strict compliance with the contract, the plaintiff was entitled to the lien given by Vernon's Sayles' Ann. Civ. St. 1914, art. 5640, to mechanics, laborers and operatives who have performed labor or worked with tools, teams and otherwise in the construction of the railroad."

In the case of Forth Worth & Denver City Railway Co. v. Read Bros. & Montgomery et al. (Tex. Civ. App.) 154 S. W. page 1028, the railway company let the contract for the construction of spur track to Read Bros. & Montgomery, who employed Bourgeois to do the work upon which his claim for lien was predicated. The suit was brought by Read Bros. & Montgomery to recover the balance due on the entire work done under the contract, and Bourgeois intervened, praying judgment against the plaintiffs for the amount due him under his contract and for a lien to secure same. In disposing of that case, we quote the following:

"The fact that intervener contract with Read Bros. & Montgomery to move dirt at 12 cents per cubic yard and rock at 7 cents per yard and to clear land at $30 per acre would not, of itself, render him a subcontractor rather than a laborer, as that is only the method employed by the parties to determine the price to be paid for the work. Railway Co. v. Daniels, 62 Tex. 73. As shown above, no part of the balance due is for the services of intervener's employees, nor for groceries, tickets, or freight charges, those items having already been discharged with the money advanced by the contractors; and, as no lien was given for the item of $352 for the hire of teams, the question to be determined is whether or not a lien was established for the balance of $720. This item was for the use of appellant's teams and tools and his own personal services, and the controlling issue is whether or not he worked with his teams and tools in such manner as to give him a lien therefor, under the provisions of Article 5640, Revised Statutes 1911. As shown above, the jury found that during the entire time that the work performed by his hired men and teams was in progress intervener worked with them. The work done by him around the camp, of the character indicated, which was necessary to the prosecution of the work done by his hired men, we think, was work with his teams and tools the same as the other services performed by him directly on the track, such as driving the teams, holding the plow, and blasting rock. For the foregoing reasons, the first assignment is overruled."

It would follow that, as a matter of law, Clifft would have his lien against railway company for his own personal services, and for the service of his teams and tools. The fact that he contracted with Diefenderfer to furnish teams and equipment to haul stone to be used by Diefenderfer and crushed in the fulfillment of his contract with the railway company would not make Clifft a subcontractor rather than a laborer, but under the facts in this case, and under the law, Clifft would have his lien enforceable against appellant for his own personal service, and that of his teams and tools.

[2] By its second assignment of error the appellant contends that its property would not be liable for the debt and lien of Clifft for the reason that Diefenderfer was at all times largely indebted to appellant, and that, appellant not being indebted to Diefenderfer, the appellee Clifft would not be entitled to a recovery. If this contention could be sustained, it would mean that persons laboring for a railroad company, as in this case, would be at the peril of contractors, and the effect would be to totally destroy the security afforded to laborers in fixing liens against property of railway companies to secure their services. Conceding, as the fact shows, that the railway company, in the beginning of the Diefenderfer contract, made advances of tools and money, which caused him to be largely indebted to the railway company, and that said condition existed during the time that Clifft labored and furnished his tools and teams to ballast the roadbed for appellant, it would be a monstrous doctrine to announce that, by reason of said indebtedness, the laborers for Diefenderfer would not have the lien guaranteed and afforded by law.

When the railway company accepted the labor of Clifft on their railroad under contract with Diefenderfer, they knew that the labor had been and should be paid, and the law would give a lien to secure him, and they could not, by contract with Diefenderfer in the manner contended or otherwise, destroy or defeat that lien. We therefore overrule the assignment, and hold that, notwithstanding Diefenderfer's indebtedness to appellant, for the labor performed by Clifft and the tools and teams furnished he would have his lien to secure same.

[3] Again it is contended by appellants that the only notice it had of appellees' claim against Diefenderfer was on November 29, 1922, when a copy of Clifft's account against Diefenderfer was delivered to J. P. Flynn, who was receiver of Diefenderfer's assets and general manager of the appellant.

Vernon's Sayles' Ann. Civ. St. 1914, art. 5640, unequivocally gives a lien to persons who labor in construction or repairing of any railroad, both for the labor performed by them and for the use of their teams and tools, and no notice or recording of liens is made necessary by that statute as is provided in some cases where the statute requires notice and the filing of same within a specified time in order to preserve liens. We therefore do not understand that the law requires notice, but in the instant case the general manager of appellant did have notice, and said assignment will be overruled. This, we believe, disposes of the real issues involved in this appeal, and it is a judgment of this court that all the said assignments be overruled.

[4] There is this question in this case, however, which will require a reversal: The testimony of Clifft, and which was the real basis for the judgment in this cause, was that at times he would have only 4 or 5 men, and other times 15 or 20 men, working for him, that he owned seven wagons and teams that he used during the work, and that others belonged to other parties, and that in doing this work he employed men to assist, and also men with their wagons and teams to assist. Just what amount of labor or tools and teams were furnished by other persons and for which judgment was recovered in this cause cannot be determined from the record. Of course, the men and teams he hired and worked outside of his own would have been in the same position as Clifft, for they would have had a lien to secure them for their labor, teams, and tools. If they, under the law, had a lien, it would follow that Clifft would not have a lien for them, for two liens could not exist for different persons for same thing. If they had a debt or lien, they only could enforce it, unless it arose by other conditions which are not involved in this case.

In view of the fact that, intermingled with the labor and tools and teams furnished by Clifft, there is also labor, tools, and teams furnished by other persons, the amount of which is not discernible from the facts in the record, and for the whole of which judgment was rendered, it makes it necessary for this cause to be reversed that the respective rights of the parties may be determined and respective amounts due be found.

The judgment of the trial court will be, therefore, reversed and cause remanded.